IN the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable Douglas R. STERN, Municipal Judge.

WISCONSIN JUDICIAL COMMISSION, Complainant,

v.

The Honorable Douglas R. STERN, Respondent.

Supreme Court

*No. 97–0622–J. Oral argument December 2, 1998.—Decided March 2, 1999.*

(Also reported in 589 N.W.2d 407.)

For the Honorable Douglas R. Stern, there were briefs by *Phillip J. Ramthun* and *Stern & Ramthun, LLP*, Milwaukee and oral argument by *Phillip J. Ramthun*.

For. the Wisconsin Judicial Commission there was a brief and oral argument by *James C. Alexander*, Madison.

¶ 1.   PER CURIAM.   This is a review, pursuant to Wis. Stat. § 757.91,[1] of the findings of fact, conclusions of law, and recommendation for discipline of the judicial conduct panel concerning the conduct of the Hon. Douglas R. Stern, municipal judge for Western Waukesha county. The panel concluded that Judge Stern engaged in judicial misconduct by holding two

---

[1] Wis. Stat. § 757.91 provides:

**Supreme court; disposition.** The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct and appropriate action in cases of permanent disability. The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

offices of public trust—municipal judge and school board member—at the same time and recommended that Judge Stern be reprimanded for that judicial misconduct. Judge Stern contested the panel's conclusion that he engaged in judicial misconduct and its recommendation that he be reprimanded. The Judicial Commission took the position that the seriousness of Judge Stern's misconduct warrants his suspension from judicial office for a minimum of 15 days.

¶ 2. We determine that the panel properly concluded that Judge Stern violated the provision of the former Code of Judicial Ethics[2] that prohibited a judge, including a municipal judge, from "hold[ing] any office of public trust except a judicial office during the term for which he or she is elected or appointed." SCR 60.04.[3] We also determine that the appropriate discipline to impose on Judge Stern for that misconduct is the reprimand recommended by the panel. Following his reelection as school board member and simultaneous election to the office of municipal judge, Judge Stern repeatedly sought an authoritative answer to the question of whether he could hold both offices at the same time, and he ultimately presented a good faith, albeit unsuccessful, argument that the prohibition did not apply to his circumstances. Nonetheless, Judge Stern took office as municipal judge while continuing as a member of the school board without having his question answered, thereby accepting the risk that his

---

[2] The Code of Judicial Ethics was replaced, effective January 1, 1997, by the Code of Judicial Conduct, SCR Chapter 60. References in this opinion to chapter 60 of the Supreme Court Rules are to the Code of Judicial Ethics.

[3] The prohibition was applicable to "occupants of part-time judicial offices such as reserve judges and municipal judges." SCR 60.39(2).

doing so would violate the Code of Judicial Ethics. Yet, once he learned the Judicial Commission had found probable cause to believe that his conduct violated the Code of Judicial Ethics and would file a disciplinary complaint with this court, he resigned from the school board.

¶ 3. The judicial conduct panel, consisting of Court of Appeals Judges Ted E. Wedemeyer, Jr., Margaret J. Vergeront, and David G. Deininger, made findings of fact based on a stipulation of the parties and on testimony presented at a hearing. None of those facts is in dispute.

¶ 4. At the 1996 spring election, Douglas Stern was reelected member of a high school board of education and elected municipal judge for Western Waukesha county. He took office as municipal judge May 1, 1996, and continues to serve in that part-time position, spending from 12 to 15 hours per week on court business. He continued to serve as school board president until November 20, 1996, when he tendered his letter of resignation confirming the resignation he had announced at the Board's November 13, 1996 meeting. That resignation was effective December 11, 1996.

¶ 5. After becoming a candidate for both positions in January 1996 and while the Supreme Court had under consideration a proposed revision of the Code of Judicial Ethics, Attorney Stern wrote a member of this court questioning the wisdom of the Code's prohibition of a judge's holding two offices of public trust when one of them is a part-time municipal judgeship. He did not cite any constitutional or statutory authority for the proposition that the rule did not or should not apply in such circumstance.

¶ 6. On March 12, 1996, Attorney Stern requested an Attorney General's Opinion on the question of whether, under Wisconsin law, an attorney who already is a part-time elected official may be elected to a part-time municipal judgeship. Assistant Attorney General Alan Lee responded that the statutes do not authorize the attorney general to provide opinions to school boards or their members, but he noted that the Supreme Court Rules, particularly SCR 60.04, "seem to be quite clear," including that the prohibition of a judge's holding any office of public trust except a judicial office during the term for which elected or appointed applied to municipal judges.

¶ 7. Attorney Stern again wrote Assistant Attorney General Lee, citing a state constitutional provision and a statute[4] imposing a similar prohibition but limited to judges of a court of record and noting that, pursuant to Wis. Stat. § 755.01(1), a municipal court is not a court of record. Responding to that communication, Assistant Attorney General Lee disagreed with Attorney Stern's conclusion that the statute precluded the Supreme Court from acting independently in adopting the prohibition in SCR 60.04:

> The statute and the supreme court rule are not necessarily in conflict; since the statute is silent [in respect to judges of courts not of record], the

---

[4] Article VII, sec. 10(1), Wis. Const., provides, in pertinent part: "No justice of the supreme court or judge of any court of record shall hold any other office of public trust, except a judicial office, during the term for which elected."

Wis. Stat. § 757.02(2) provides: "The judge of any court of record in this state shall be ineligible to hold any office of public trust, except a judicial office, during the term for which he or she was elected or appointed."

supreme court's rule could be viewed as supplementing the statute. There is only a conflict if the Legislature specifically spoke to the matter and stated that municipal judges could hold other offices and the supreme court's rule said they could not.

He also disagreed with Attorney Stern's conclusion that the statute would "trump" the supreme court rule.

¶ 8. Following the spring election, Judge-elect Stern sought assistance in the matter from a state senator, who then wrote the chief justice of this court concerning what she perceived to be an apparent conflict between the Code of Judicial Conduct the court recently had promulgated and the Wisconsin Constitution in respect to a judge's simultaneous holding of other offices of public trust. The chief justice declined comment on the matter because the issue had arisen in the context of a judicial disciplinary proceeding involving Judge Stern, which was pending before a judicial conduct panel. The chief justice invited the senator to bring her concern to the court's attention after the pending proceeding was concluded.

¶ 9. The Judicial Commission notified Judge Stern April 30, 1996, that it was investigating his holding two offices. Prior to being informed of its investigation, Judge Stern never contacted anyone at the Judicial Commission to ask whether he could hold both offices. A few days after learning of the Judicial Commission's investigation, Judge Stern asked the State Ethics Board for an opinion, and it responded that it did not interpret the Code of Judicial Ethics. He informed the Judicial Commission May 3, 1996, that he held both positions and believed the SCR 60.04 prohibition to be in conflict with state law.

¶ 10.  Judge Stern then filed a petition for writ of mandamus in this court May 13, 1996, asking that the Judicial Commission be ordered to respect the limited prohibition set forth in the constitution and the statute and that the court declare that the SCR 60.04 prohibition did not apply to the office of municipal judge. The court denied that petition ex parte June 11, 1996.

¶ 11.  Following a hearing held October 24, 1996, the Judicial Commission notified Judge Stern that it had found probable cause to believe he had engaged in a wilful violation of SCR 60.04 and that it intended to file a complaint with the Supreme Court seeking discipline. Judge Stern then resigned from the school board and by letter of November 22, 1996, informed the Judicial Commission of his resignation. The Judicial Commission filed a complaint in this matter three months later.

¶ 12.  On the basis of those facts, the judicial conduct panel made the following conclusions of law. First, notwithstanding the state constitutional and statutory provisions prohibiting a judge of a court of record from holding more than one office of public trust, the Supreme Court is not precluded from extending that prohibition to municipal judges under its Code of Judicial Ethics. Second, as the school board membership and the municipal judgeship are offices of public trust, until his resignation from the school board, Judge Stern violated SCR 60.04. Third, Judge Stern's violation of that rule was wilful and thus constituted judicial misconduct under Wis. Stat. § 757.81(4)(a).[5]

¶ 13.  In respect to its third conclusion, the panel determined that in the context of a judicial disciplinary proceeding, a judge's conduct is "wilful" if it is the

[5] Wis. Stat. § 757.81(4)(a) defines judicial misconduct to include "Wilful violation of a rule of the code of judicial ethics."

result of the judge's "free will and not as a result of duress or coercion," citing *Judicial Disciplinary Proceedings Against Pressentin*, 139 Wis. 2d 150, 406 N.W.2d 779 (1987). There, a municipal judge ran for the office of county supervisor without first resigning his judgeship, contrary to the prohibition of SCR 60.05 that "a judge shall not become a candidate for a federal, state or local nonjudicial elective office without first resigning his or her judgeship." This court rejected the judge's contention that his violation of the rule was not wilful because he did not know of the rule's provisions, holding that the judge's violation was wilful whether or not he had actual knowledge of the rule.

¶ 14.   The panel rejected Judge Stern's contention that his conduct could not be considered wilful because he never received a "definitive answer" to the question of whether he could hold both offices until after the Judicial Commission hearing held October 24, 1996. Pointing out that a great deal of judicial conduct would escape scrutiny if wilfulness did not attach until after the judge had made a formal appearance before the Judicial Commission, the panel refused to adopt what it called "an unreasonable interpretation of the Code." The panel also rejected Judge Stern's other arguments: that he was entitled to a reasonable time to comply with the rule after his "challenge" to it was rejected, that there was no formal advice-giving body to consider the propriety of his conduct, and that, as he no longer held both elective offices, the disciplinary proceeding should be dismissed.

¶ 15.   In determining the discipline to recommend for Judge Stern's misconduct, the panel acknowledged that in many respects the offices of part-time municipal judge and school board member are "community service" positions, with minimal compen-

sation and a substantial time commitment, and that the discharge of the responsibilities of those positions is "laudatory." Nonetheless, the panel understood the Supreme Court's rule—what it termed "a bright line prohibition"—to be based on the concept of separation of powers and intended to protect the judiciary from inevitable conflicts that would face a judge who holds another office of public trust.

¶ 16. In the latter respect, Judge Stern testified that between May 1, 1996, and October 24, 1996, he had presided over from 10 to 20 ordinance violation cases, such as possession of tobacco and loitering on school grounds, that arose out of the school district he served. Noting there was no suggestion that Judge Stern had acted inappropriately in any municipal prosecution involving a student or a school policy, the panel deemed the absence of actual conflict or impropriety immaterial.

¶ 17. The panel also noted that before taking office as municipal judge, Judge Stern inquired of several sources whether he could hold both offices. Yet, he did not contact the Judicial Commission—the agency statutorily charged with investigating and, where it deems appropriate, prosecuting alleged violations of the Code of Judicial Ethics.

¶ 18. The panel's recommendation of a reprimand as appropriate discipline to be imposed for Judge Stern's misconduct is based in part on its perception of the public's need for protection from similar misconduct by other judges in the future. It is also based on the panel's belief that similar misconduct by Judge Stern is unlikely.

¶ 19. In this review, Judge Stern first argued that the judicial conduct panel improperly interpreted the term "wilful" to mean "the absence of duress or

coercion." He would have the court interpret it to mean "intentional" and "without excuse." He averred that his running for municipal judge and for reelection as school board member and his subsequent holding of both offices were not done intentionally to flout the Supreme Court Rules. He contended that his attempts to obtain a ruling on the application of the prohibition by filing a writ of mandamus and by recourse to a state senator and to the attorney general distinguish his conduct from an intentional violation of a rule with the "evil purpose" he believes is required by the ordinary meaning of "wilful."

¶ 20. For its part, the Judicial Commission cited Judge Stern's testimony that he first learned of the SCR 60.04 prohibition in January 1996, shortly after he filed as a candidate for the office of municipal court judge, when a circuit judge told him of the rule's prohibition and said she did not think he could serve as both a municipal judge and a school board member. Also in January 1996, the program attorney for municipal judge education in the Supreme Court's Office of Judicial Education advised Judge Stern of the SCR 60.04 prohibition. Thus, the Commission argued, it was clear to Judge Stern when he read the rule that, by its terms, it prohibited a municipal court judge from simultaneously serving as a school board member.

¶ 21. The panel's conclusion that Judge Stern's violation of SCR 60.04 was "wilful" was properly drawn from the undisputed facts. While that conclusion focused on the "free will—duress—coercion" aspects of the term, the panel's findings support a determination of wilfulness from the aspect of knowledge—actual or imputed. "Prior judicial disciplinary cases have established that 'wilful' means that the judge's conduct was not the result of duress or coercion and that the judge

229

knew or should have known that the conduct was prohibited by the Code of Judicial Ethics." *Judicial Disciplinary Proceedings Against Tesmer*, 219 Wis. 2d 709, 730, 580 N.W.2d 317 (1998).

¶ 22.  The element of knowledge in respect to Judge Stern's conduct is established by the undisputed fact that Judge Stern was aware of the provisions of SCR 60.04 almost two months before the election and four months prior to being sworn in as municipal judge. The panel said, "The language of SCR 60.04 is unambiguous and *Pressentin* expressly held that municipal judges were subject to the Code of Judicial Ethics." Thus, not only was Judge Stern chargeable with knowledge of the prohibitions set forth in the Code of Judicial Ethics, but he also had actual knowledge of the specific prohibition as early as January of 1996 when a circuit judge advised him of the rule's prohibition and of her belief that it prohibited him from serving as municipal judge and school board member.

¶ 23.  Judge Stern next argued that the application of SCR 60.04 to him was vague for the reason that a provision of the Wisconsin Constitution and a statute set forth a similar prohibition against holding two offices of public trust but explicitly limit it to judges of courts of record. He took the position that it was reasonable for him to interpret the interplay between the constitutional and statutory prohibitions on the one hand and the Supreme Court Rule prohibition on the other so as to be in conformity, that is, that the Supreme Court's rule would not conflict with the constitution and the statute. Judge Stern also contended that when the legislature created municipal courts, it was aware of the constitutional and statutory prohibitions and intentionally made municipal courts not courts of record so that municipal court judges would

not be subject to the prohibition of holding two offices of public trust.

¶ 24. In addition, Judge Stern suggested that because municipal courts are creatures of the legislature, this court should defer to the legislature in respect to determinations concerning those courts that do not impair their ability to function impartially or impugn their integrity. He urged that the "legislature's determination" not to apply the statutory prohibition of a judge's holding two offices of public trust to courts that are not courts of record should be respected, asserting that by extending the constitutional and statutory prohibitions to municipal judges in its own rule, this court effectively has amended the Wisconsin Constitution and state statutes.

¶ 25. We find no merit to Judge Stern's argument that a constitutional provision and a statute setting forth a prohibition limited to judges of courts of record similar to this court's prohibition applicable to municipal court judges as well created either a conflict that he was entitled to presume the court's rule could not countenance or an ambiguity regarding the rule's application to him. This court has the authority to promulgate rules of conduct applicable to municipal court judges and to other persons or matters under its jurisdiction where the legislature has not acted. The legislature and the Constitution are silent in respect to the simultaneous holding of two offices of public trust by a judge of a court not of record. The prohibition of SCR 60.04 was clear and unambiguous, as was its application to part-time municipal judges, not only by virtue of the rule itself but also by the court's decision in *Pressentin*.

¶ 26. Having determined that Judge Stern engaged in judicial misconduct by simultaneously

holding two offices of public trust, we turn to the issue of the discipline to be imposed for that misconduct. The Judicial Commission took the position that the seriousness of that misconduct, in terms of the adverse effect it had on the public's perception of the integrity of the judiciary, and the need to protect the public from any recurrence of similar misconduct warrant his suspension from office for at least 15 days. The Judicial Commission expressed particular concern with the fact that Judge Stern's violation of the Code of Judicial Ethics was open and notorious, as the issue of his eligibility to hold both offices was a matter of public knowledge raised and discussed during the election.

¶ 27. In support of its position, the Judicial Commission cites *Pressentin, Id.*, in which we suspended a municipal judge from office for six months as discipline for having sought election to a nonjudicial elective office without first resigning his judicial office, in violation of the Code of Judicial Ethics. However, Judge Stern's case is distinguishable from Judge Pressentin's in several respects. First, Judge Pressentin, who had been a municipal judge for more than 17 years, chose to violate the Code by pursuing election to a nonjudicial elective position. Judge Stern's violation occurred not during the simultaneous election campaigns but only upon his swearings in to both offices. Thus, Judge Pressentin was in a position to use his judicial office as an advantage during the election; Judge Stern was not. Moreover, until he was sworn in to both offices, Judge Stern retained the option of declining either of them and not violating the Code.

¶ 28. Second, unlike the several attempts Judge Stern made to obtain an opinion or ruling that the Code prohibition did not apply to him, Judge Pressentin merely relied on his continuing campaign for the office

of county supervisor as constituting a legitimate challenge to the Code prohibition. In that respect, we stated in *Pressentin* that the judge had means other than a campaign for election to nonjudicial office available to challenge the rule prohibiting his conduct, ". . .[f]or example, by seeking an injunction against enforcement of the rule or declaratory judgment with respect to the rule's validity or applicability." *Pressentin, Id.*, 156. Here, unlike Judge Pressentin, Judge Stern pursued those means, albeit after he chose to violate the rule he was challenging. Also, once the Judicial Commission found probable cause to believe he had engaged in a wilful violation of the Code and announced that it would file a complaint with this court seeking discipline, Judge Stern brought his misconduct to an end by resigning from the nonjudicial office.

¶ 29.   Nonetheless, we are concerned that Judge Stern, after being made aware of the clear, unambiguous prohibition of his holding two offices of public trust simultaneously, chose to take both offices and continued to occupy them without having obtained an authoritative affirmation of his good faith legal argument that the rule did not apply to him. Indeed, he never posed his question to the Judicial Commission, even if its answer would not have been "definitive," and he did not seek the injunction or declaratory judgment we suggested in *Pressentin* until after he had assumed both offices.

¶ 30.   Under the circumstances, we determine that the appropriate discipline for Judge Stern's judicial misconduct is a reprimand. The likelihood of similar misconduct by Judge Stern is minimal, and the reprimand we impose on him should provide adequate protection to the public from any further judicial misconduct of this kind by others.

¶ 31.   IT IS ORDERED that the Honorable Douglas R. Stern is reprimanded for judicial misconduct established in this proceeding.